## FRANK TURMAN v. THE STATE.

1. MALICIOUS MISCHIEF. — Article 713 of the Penal Code (Pasc. Dig,, art. 2344), which punishes injuries done to certain dumb animals, with intent to injure their owner, was enacted to protect the interest of the owner, and regulates the fine by the injury done the owner.

2. SAME. — But the purpose of the next succeeding article is the protection of the animals themselves, without reference to the injury done the owner, and the fine is fixed within arbitrary limits. In prosecutions under this article the name of the owner need not be alleged.

3. MAIMING. — In applying to dumb animals the verb "maim," the Code uses it in the sense of *to cripple;* and an information which alleges that the accused "did unlawfully, willfully, and wantonly maim" a certain animal, of a species enumerated in these articles, sufficiently charges the *gravamen* of an offense defined by article 714 of the Penal Code.

4. INTERPRETATION OF THE CODE. — Unless otherwise defined by the Code, a word, term, or phrase therein used is to be understood as in common language.

5. VENUE. — A conviction must be set aside on appeal when the transcript fails to show that any evidence of the venue of the offense was adduced.

APPEAL from the County Court of Wood. Tried below before the Hon. W. J. JONES.

The injured animal was a mule, and the State's witnesses testified that "his hamstring had been cut into," apparently with an ax, crippling him. Finding the appellant guilty, the jury assessed against him a fine of $75.

No brief for the appellant.

*George McCormick,* Assistant Attorney-General, for the State.

WINKLER, J. The first question raised in this case is as to the sufficiency of the information, which the accused moved the court to quash, on the ground, as stated in the motion, that "the facts constituting the offense of maiming are not set forth in said affidavit and information."

It is stated in the information that the accused, in the county of Wood, on December 19, 1877, "did then and there unlawfully, willfully, and wantonly maim a dumb animal, to wit, a certain dark-bay mule, the same being a dumb animal such as is enumerated in article 713 of the Penal Code of. the state of Texas, and being the property of him, the said Jake McMillan," with proper conclusion.

The article of the Penal Code upon which this prosecution rests is as follows :

"If any person shall willfully and wantonly kill, maim, wound, poison, or cruelly and unmercifully beat and abuse any dumb animal, such as is enumerated in the preceding article, he shall be fined not exceeding two hundred and fifty dollars." Pasc. Dig., art. 2345.

The dumb animals enumerated in the preceding article are, as therein named, "any horse, mare, gelding, jack, jennet, mule, colt, cattle, sheep, goat, swine, or dog, of another." The preceding article to the one under which the information is presented is found to be article 713 of the Penal Code of the state of Texas. The apparent object of the Legislature in enacting these articles of the Code was, in article 713, to protect the interests of the *owner* of the animals mentioned therein by imposing a fine, to be regulated by the amount of the injury done to the owner ; whilst they at the same time intended to protect the several dumb animals mentioned in article 713 by enacting article 714, and affixing a penalty for its violation, within certain limits, and without reference to the injury done to the owner. *Benson* v. *The State*, 1 Texas Ct. App. 6 ; *Rose* v. *The State*, 1 Texas Ct. App. 400.

It cannot be questioned that, under the article cited above, it is clearly an offense to maim a mule ; and, being a statutory offense, it is ordinarily sufficient to charge such in the language, substantially, which creates the offense. This the pleader has done in both the affidavit and the informa-

tion, by charging that the mule was one of the dumb animals enumerated in the article named; that it was maimed by the accused, and that the act was willfully and wantonly done; as well as giving the name of the owner, which, perhaps, was unnecessary. The requirements of the two articles must not be confounded.

The offense charged is maiming. If we were to go to the common law for the meaning of the word "maim," or "mayhem," as sometimes written, we would find it difficult to apply it to dumb animals, it being generally applied to rational beings, as men; but the language of the Code, except when a word, term, or phrase is specially defined, is to be taken and construed in the sense in which it is understood in common language. The word "maim," as a transitive verb, is defined by Mr. Webster, "to deprive of a necessary part, to cripple, to disable;" as a noun, his second definition is, "the privation of any necessary part, a crippling."

We are of opinion there can be but little doubt as to what the law means when it applies the word *maim* to a dumb animal; it is synonymous, or very nearly so, with the word *cripple*, in every-day use. Hence we are of opinion that the information sufficiently describes the offense, and that the court did not err in overruling the motion to quash.

The judgment must be reversed, however, upon another ground. It is not shown by the statement of facts that there was any evidence as to where the offense was committed, so that it can be determined therefrom that the court had jurisdiction. There does not appear to have been any venue proved. This cannot be dispensed with. *Bell* v. *The State*, 1 Texas Ct. App. 81; *Jack* v. *The State*, 3 Texas Ct. App. 72; *Harrison* v. *The State*, 3 Texas Ct. App. 558.

The judgment of the County Court is reversed, and the cause remanded.

*Reversed and remanded.*